**BEFORE THE**
**U.S. COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| CLEVELAND-CLIFFS INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Ct. No. 22-00355 |
| UNITED STATES, | ) ) ) |
| Defendant. | ) ) ) ) |

**COMPLAINT**

Plaintiff, Cleveland-Cliffs Inc., ("Plaintiff"), by and through its attorneys, alleges and states as follows:

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. Plaintiff contests the U.S. International Trade Commission's (the "Commission") final negative likely injury determination for Brazil in the five-year reviews of the antidumping and countervailing duty orders on hot-rolled steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom. *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom,* Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review) and 731-TA-808 (Fourth Review), USITC Pub. 5380 (November 2022) ("*Views*"). The Commission's negative determination for Brazil was published at 87 Fed. Reg. 74,167 (December 2, 2022).

## JURISDICTION

2. This Court has jurisdiction over this action to review the Commission's negative likely injury determination for Brazil pursuant to 28 U.S.C. § 1581(c), because this action was commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *as amended.* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii).

## STANDING

3. Plaintiff is a domestic producer of the hot-rolled steel products that were the domestic like product in the underlying reviews. Plaintiff is, therefore, an interested party within the meaning of 19 U.S.C. §§ 1561a(f)(3) and 1677(9)(C). Plaintiff also participated as a party in the reviews below. Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4. Plaintiff commenced this action by filing a summons on December 30, 2022, which is within 30 days of the publication in the Federal Register of the Commission's final negative determination for Brazil. *See* Summons (Ct. Int'l Trade, Ct. No. 22-00355, December 30, 2022), ECF No. 1; *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom,* 87 Fed. Reg. 74,167 (December 2, 2022). This complaint is being filed within 30 days after the filing of the summons. The summons and complaint are therefore timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2) and Rules 3(a)(2) and 6(a) of this Court.

## THE ADMINISTRATIVE PROCEEDING

5. This appeal arises out of the Commission's five-year reviews of the orders on hot-rolled steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom. *Views* at 1 *et seq*. In that review, the Commission reviewed the order covering hot-rolled steel from Russia, which was issued in September 2014, and the orders on Australia, Brazil, Japan, Netherlands, South Korea, Turkey, and the United Kingdom, which were issued in July and September 2016. *Views* at 3-4.

### I. The Original Investigation on Russia and Subsequent Sunset Reviews of the Russian Order

6. On September 30, 1998, eleven domestic producers of hot-rolled steel, together with the United Steelworkers and the Independent Steel Workers Union, filed antidumping and countervailing duty petitions with the Department of Commerce and the Commission on imports of hot-rolled steel from Brazil, Japan and Russia. *Views* at 4.[1]

7. In June 1999, the Commission determined that an industry in the United States was materially injured by reason of less than fair value imports from Japan. *Views* at 4. Commerce issued an antidumping duty order covering these imports from Japan in June 1999. On July 6, 1999, Commerce signed suspension agreements covering hot-rolled steel imports from Brazil and Russia. *Id.* In August 1999, after the petitioners requested continuation of the investigations for imports from Brazil and Russia, the Commission determined that the domestic hot-rolled steel industry was materially injured by reason of the subject imports from Brazil and Russia. *Id*.

---

[1] The twelve domestic producers, were Bethlehem Steel Corp., U.S. Steel Group, Ispat Inland Steel, LTV Steel Co. Inc., California Steel Industries, Gallatin Steel Co., Geneva Steel, Gulf States Steel, Inc., IPSCO Steel, Inc., Steel Dynamics, and Weirton Steel Corp. *Certain Hot-Rolled Steel Products from Japan*, Inv. No. 731-TA-807 (Final), USITC Pub. 3202 (June 1999) at 1.

3

8.    Between the issuance of the Commission's affirmative injury determination for Russia in 1999 and 2016, the Commission conducted three five-year reviews covering imports of hot-rolled steel from Russia. *Views* at 4-6.[2]  In each review, the Commission determined that revocation of the suspension agreement or order on the subject imports from Russia would likely lead to the continuation or recurrence of material injury to the domestic industry within a reasonably foreseeable time. *Id*.[3]

## II.    The Original Investigations on Hot-Rolled Steel Imports from Australia, Brazil, Japan, the Netherlands, South Korea, Turkey, and the United Kingdom

9.    In August 2015, AK Steel Corporation, ArcelorMittal USA LLC,[4] Nucor Corporation, SSAB Enterprises LLC, Steel Dynamics Inc., and United States Steel Corporation filed antidumping and countervailing duty petitions on hot-rolled steel imports from Australia, Brazil, Japan, the Netherlands, South Korea, Turkey, and the United Kingdom. *Views* at 3.

10.    In September 2016, the Commission determined that the domestic hot-rolled steel industry was materially injured by reason of the subject imports of hot-rolled steel from Australia, Brazil, Japan, the Netherlands, South Korea, Turkey, and the United Kingdom. *Views* at 3-4.  Accordingly, in October 2016, the Department of Commerce published antidumping and/or countervailing duty orders on the subject imports from the seven countries. *Views* at 3-4.

---

[2] In February 2001, the Commerce Department terminated the suspension agreement for the antidumping investigation of imports from Brazil in February 2001, after finding that the Brazilian producers violated the agreement, and issued an antidumping order on these imports in April 2001. *Views* at 4, n. 11.  In September 2004, the Commerce Department terminated the suspension agreement with respect to the countervailing duty investigation of the imports from Brazil at the request of the Brazilian government and issued a countervailing duty order on the Brazilian imports in its place. *Views* at 4.  In its second review of the orders on imports from Brazil and Japan, the Commission issued negative determinations for the two countries and the orders were revoked. *Id*. at 5.
[3] The Commerce Department terminated the suspension agreement for Russia in September 2014 and issued an antidumping order in its place. *Views* at 6.
[4] AK Steel Corporation and ArcelorMittal USA were acquired by Cleveland-Cliffs in 2020.  Accordingly, Cleveland-Cliffs is the successor-in-interest to these two producers.

**II.     The Five-Year Reviews of the Hot-Rolled Steel Orders**

11.     On September 1, 2021, the Commission instituted its five-year reviews of the antidumping and countervailing duty orders on hot-rolled steel from Australia, Brazil, Japan, the Netherlands, Russia, South Korea, Turkey, and the United Kingdom.  *Views* at 1.  During the reviews, Cleveland-Cliffs and other members of the domestic industry demonstrated that the subject imports of hot-rolled steel from Brazil would likely have a discernible adverse impact on the domestic industry and that they would be likely to compete with each other and the domestic like product upon revocation.  *Views* at 26-50 & 50-59.

12.     Cleveland-Cliffs and other domestic producers also demonstrated that subject imports from Brazil would compete under the same conditions of competition as the other subject imports and the domestic like product.  Accordingly, they argued that subject imports from all eight countries, including Brazil, should be cumulated and that the Commission should find that cumulated subject imports would be likely to cause material injury to the domestic industry upon revocation of the orders.  *Views* at 62, nn. 386 & 387.

13.     In its determinations in the reviews, a divided Commission chose not to cumulate subject imports from Brazil with the other subject imports.  *Views* at 59-62, 66 & 108-114.  Chairman Johanson, Commissioner Karpel and Commissioner Kearns chose not to cumulate the subject imports from Brazil with the other subject imports.  Although these Commissioners found that subject imports from Brazil would likely have a discernible adverse impact on the domestic industry and would be likely to compete with each other and the domestic like product if the orders were revoked, *id*. at 31-33 & 58-59, they exercised their discretion under the statute not to cumulate the subject imports from Brazil with other subject imports on the grounds that

the Brazilian imports would compete under different conditions of competition than the other subject imports. *Views* at 59-62.[5]

14. In reaching this decision, these Commissioners relied heavily on the fact that the quota imposed on the hot-rolled steel imports from Brazil under section 232 of the Trade Expansion Act of 1962 (19 U.S.C. §1862) was 143,416 short tons. *Views* at 60. According to the Commission majority, this fact meant that imports of hot-rolled steel from the other subject countries were "in a position to compete for a greater number of sales at larger volumes than subject producers in Brazil which must share the smaller quota." *Views* at 61-62.

15. As a result, the Commission majority found the Brazilian imports would compete under different conditions of competition than the other subject imports, including the Korean imports, even though the other subject imports from almost all of the other subject countries were also subject to section 232 measures and the Korean imports (like imports from Brazil) were subject to an absolute quota under Section 232. *View*s at 60-62. The Commission majority distinguished the quota on Korea from the quota on Brazil by pointing out that the annual quota limit for Korea (584,544 short tons) was larger than the annual quota limit for Brazil (143,416 short tons). *Views* at 60-61.

16. In its analysis for Brazil, the Commission majority also relied heavily on the fact that "the record of these reviews does not indicate that the section 232 trade action as it relates to imports of hot-rolled steel from Brazil, an absolute quota, will likely be terminated in the reasonably foreseeable future." *Views* at 103. They stated that "the quota has been in place" since being imposed in March 2018 and that "there has been no announcement by the Administration that it is considering revising or removing the quota on Brazil in the reasonably

---

[5] These Commissioners did cumulate the subject imports from the other seven countries. Views at 63-67.

foreseeable future." *Id*. As a result, they concluded that "the section 232 trade action, as currently structured and enforced, likely will continue through the reasonably foreseeable future." *Id*.

17. After deciding not to cumulate the subject imports from Brazil with the imports from the other subject countries, the Commission majority determined that cumulated subject imports from Australia, Japan, the Netherlands, Russia, South Korea, Turkey, and the United Kingdom would likely cause the continuation or recurrence of material injury to the domestic industry if the orders were revoked. *Views* at 67-100. With respect to the subject imports from Brazil, however, they determined that Brazilian imports would not likely cause material injury to the domestic industry upon revocation, once again relying heavily on the facts that Brazilian imports were subject to a quota under section 232 and that this quota was smaller than the quota on imports from Korea. *Views* at 100-107.

18. Commissioners Schmidtlein and Stayin dissented from the Commission majority's findings with respect to Brazil. *Views* at 108-114. They found that the difference in quota levels between Brazil, South Korea and the other subject countries did not constitute a different likely condition of competition for Brazil that warranted decumulating imports from Brazil. *Views* at 108-113. They pointed out that the fact that imports from Brazil may be subject to a quota while others may be subject to a higher quota, tariffs or tariff rate quotas under section 232 "does not affect the conditions of competition facing these imports in the U.S. market, nor does it suggest that the imports would not compete with each and with the domestic like product if the orders were to be revoked." *Views* at 111.

19. In this regard, they explained, the "differences in the measures do not affect the types of products that may be sold in the U.S. market, nor do they affect the locations or

channels of distribution through which the imports may be sold." *Views* at 111. Accordingly, they concluded, "any differences in these section 232 measures will not result in the imports from different subject countries competing differently in the marketplace." *Id*. Moreover, Commissioners Schmidtlein and Stayin stated, "while one may argue that the difference in quota levels between Brazil and South Korea may ultimately have a different impact on the domestic industry (and that is debatable), this is not a difference in the conditions of competition." *Views* at 113. As a result, they cumulated the subject imports from Brazil with the other subject imports and made an affirmative determination for all subject countries. *Views* at 113-114.

20. To summarize, the Commission unanimously issued an affirmative likely injury determination for the subject imports from Australia, Japan, the Netherlands, Russia, South Korea, Turkey, and the United Kingdom. Views at 107. The Commission issued a negative determination for the subject imports from Brazil, with two members of the Commission dissenting from that decision. *Id* at 107 & 114.

## CLAIMS AND BASES FOR RELIEF

### COUNT I

21. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 20. The Commission majority's determination not to cumulate the subject imports from Brazil with the subject imports from Australia, Japan, the Netherlands, Russia, South Korea, Turkey, and the United Kingdom was not in accordance with law.

22. The U.S. Court of International Trade has stated that, when the Commission bases its "conditions of competition" analysis on the absolute likely volumes of the imports as part of its cumulation analysis, it is engaged in "an impermissible circular {likely injury} analysis" under the statute. *Nucor Corporation v. United States*, 605 F. Supp. 2d 1361, 1370, n. 12 (Ct.

8

Int'l Trade 2009); *Allegheny Ludlum Corporation v. United States*, 475 F. Supp. 2d 1370, 1378-79 (Ct. Int'l Trade 2006); *Neenah Foundry Co. v. United States*, 155 F. Supp. 2d 766, 771-777 (Ct. Int'l Trade 2001).

23. By focusing so heavily on the likely volume of the Brazilian imports in its cumulation analysis in the hot-rolled steel investigation, the Commission conducted the same "circular" injury analysis that the Court has described as "impermissible" in *Nucor v. United States*, *Allegheny Ludlum v. United States*, and *Neenah Foundry v. United States*.

### COUNT II

24. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 23. The Commission's determination not to cumulate the subject imports from Brazil was not supported by substantial evidence.

25. In its cumulation analysis for Brazil, the Commission majority found that "the record of these reviews does not indicate that the section 232 trade action as it relates to imports of hot-rolled steel from Brazil, an absolute quota, will likely be terminated in the reasonably foreseeable future." Views at 103. They stated that "the quota has been in place" since being imposed in March 2018 and that "there has been no announcement by the Administration that it is considering revising or removing the quota on Brazil in the reasonably foreseeable future." Views at 103. As a result, they concluded that "the section 232 trade action, as currently structured and enforced, likely will continue through the reasonably foreseeable future." Views at 103.

26. These findings are not supported by substantial evidence. Cleveland-Cliffs and the other members of the domestic industry placed on undisputed record evidence indicating that, in the months leading up to the Commission's determination in the hot-rolled steel review, the

President had revised the section 232 tariffs for the European Union, the United Kingdom and Japan.  Moreover, Cleveland-Cliffs and the other domestic producers also placed on record evidence indicating that the governments of Brazil and South Korea were both urging the Administration to weaken Section 232 relief with respect to those countries.

27. Despite the strong evidence submitted by domestic producers on this issue, the Commission concluded that "the section 232 trade action, as currently structured and enforced, likely will continue through the reasonably foreseeable future."  Views at 103.  Given the undisputed evidence on record to the contrary, the Commission's decision not to cumulate Brazil with the other subject countries was not supported by substantial evidence as a whole.

## COUNT III

28. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 27.  The Commission's determination not to cumulate the subject imports from Brazil was not in accordance with law because it was inconsistent with its prior decisions addressing the impact of section 232 on the volume and pricing of subject imports.

29. Prior to its decision for Brazil in the hot-rolled and cold-rolled steel reviews,[6] the Commission had generally not relied on the section 232 tariffs, quotas, and tariff rate quotas as a basis for exercising its discretion not to cumulate the subject imports.  On the contrary, in cases like *Clad Steel Plate from Japan*,[7] *Non-Oriented Electrical Steel from China, Germany, Japan,*

---

[6] In its recent reviews of the antidumping and countervailing duty orders on cold-rolled steel from Brazil, China, India, Japan, South Korea, and the United Kingdom, the Commission also determined not to exercise its discretion to cumulate the subject imports from Brazil with the other subject imports on the grounds that the Brazilian imports would not compete under similar conditions of competition with the other imports.  It then issued a negative likely injury determination for Brazil. *Cold-Rolled Steel Flat Products from Brazil, China, India, Japan, South Korea and the United Kingdom*, Inv. Nos. 701-TA-540543 & 731=TA-1283-1287 & 1290 (Review) (Aug. 2022) at 41-45. Cleveland-Cliffs has also appealed this determination to the Court. *Cleveland-Cliffs Inc. v. United States*, Ct. No. 22-257.

[7] *Clad Steel Plate from Japan*, Inv. Nos. 731-TA-739 (Fourth Review), USITC Pub. 4851 (Dec. 2018) at 19.

10

*Korea Sweden and Taiwan*,[8] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago*,[9] *Tin- and Chromium-Coated Steel Sheet from Japan*,[10] and *Certain Corrosion-Resistant Steel Products from China, India, Italy, South Korea and Taiwan*,[11] the Commission cumulated the subject imports from all subject countries, even though many were subject to section 232 tariffs, quotas and tariff rate quotas.

30. In its decision for Brazil, the Commission failed to address its departure from this practice, rendering its decision not otherwise in accordance with law.

## COUNT IV

31. Petitioner hereby realleges and incorporates by reference paragraphs 1 through 30. As described above, the Commission's decision not to cumulate the subject imports with Brazil with the other subject imports was not supported by substantial evidence and not otherwise in accordance with law.

32. As a result, the Commission's negative likely injury determination for Brazil, by itself, was not supported by substantial evidence or otherwise in accordance law.

## REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

---

[8] *Non-Oriented Electrical Steel from China, Germany, Japan, Korea, Sweden, and Taiwan, Inv. Nos. 701-TA-506 and 508 and 731-TA-1238-1243 (Review)*, USITC Pub. 5140 (Dec. 2020) at 33 n. 189. The reference to Section 301 duties refers to duties imposed on certain imports from China pursuant to Section 301 of the Trade Act of 1974, as amended.
[9] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, and Trinidad and Tobago, Inv. Nos. 701-TA-417 and 731-TA-953, 957-959, and 961 (Third Review)*, USITC Pub. 5100 (Aug. 2020) at 46 n. 298.
[10] *Tin- and Chromium-Coated Steel Sheet from Japan, Inv. Nos. 731-TA-860 (Third Review)*, USITC Pub. 4795 (June 2018) at 21.
[11] *Certain Corrosion-Resistant Steel Products from China, India, Italy, South Korea and Taiwan*, *Inv. Nos. 701-TA-534-537 & 731-TA-1274-1278 (Review)*, USITC Pub. 5337 (Aug. 2022) at 51 ("CORE Views").

1)      Hold that the Commission's final negative determination for Brazil in *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom,* Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review) and 731-TA-808 (Fourth Review), USITC Pub. 5380 (November 2022) was unsupported by substantial evidence and otherwise not in accordance with law; and

2)      Remand the Commission's final determination for Brazil in that review to the Commission for disposition consistent with the Court's final opinion in this matter.

Respectfully submitted,

*/s/ Stephen P. Vaughn*
Stephen P. Vaughn, Esq.
Neal J. Reynolds, Esq.
Barbara Medrado, Esq.

**KING & SPALDING LLP**
1700 Pennsylvania Ave., N.W.
Washington, DC 20006
(202) 737-0500

*Counsel for Cleveland-Cliffs Inc*.

Dated: January 25, 2023

# CERTIFICATION OF SERVICE
*Cleveland-Cliffs Inc. v. United States*
Court No. 22-cv-00355

This is to certify that on January 25, 2023, I have caused a copy of the foregoing **COMPLAINT** to be served upon the following parties via certified mail, return receipt requested at the following addresses:

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza
Room 346, Third Floor
New York, NY 10278

Supervising Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

The Honorable Katherine M. Hiner
Acting Secretary
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436

Roger B. Schagrin
Schagrin Associates
900 Seventh Street, NW
Suite 500
Washington, DC 20001

Alan H. Price
Wiley Rein LLP
2050 M Street, NW
Washington, DC 20036

Thomas M. Beline
Cassidy Levy Kent (USA) LLP
900 19th Street, NW
Suite 400
Washington, DC 20006

Daniel L. Porter
Curtis, Mallet-Prevost, Colt & Mosle LLP
1717 Pennsylvania Avenue, NW
Washington, DC 20006

Chunlian (Lian) Yang
Alston & Bird LLP
950 F Street, NW
Washington, DC 20004

Shawn M. Higgins
Sidley Austin LLP
1501 K Street, NW
Washington, DC 20005

Thomas J. Trendl
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

David L. Simon
Law Offices of David L. Simon
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036

Craig A. Lewis,
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004

Jarrod M. Goldfeder
Trade Pacific PLLC
700 Pennsylvania Ave., SE
Suite 500
Washington, DC 20003

Kathleen W. Cannon
Kelley Drye & Warren LLP
Washington Harbour
Suite 400
Washington, DC 20007

Kristin H. Mowry
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015

Brady W. Mills
Morris, Manning & Martin, LLP
1401 Eye Street, NW
Suite 600
Washington, DC 20005

Ahmet Erkan Centinkayis
T.C. Ticaret Bakanligi
Sogutozu Mah. 2176. SK. No; 63 06530
Cankaya, Ankara, Turkey

Roy Houseman
International Union, AFL-CIO
1155 Connecticut Avenue NW
Suite 500
Washington, DC 20036

*/s/ Stephen P. Vaughn*
Stephen P. Vaughn
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500